## Miller v. Lembo

*Maximilian J. Klinger*, for plaintiffs.
*Mirarchi & Mirarchi*, for defendants.

CRUMLISH, J., December 14, 1956.—This matter is before us on preliminary objections.

By complaint in equity, plaintiffs, minority stockholders, seek an accounting from a resident of Philadelphia, as alleged president of a Brazilian corporation, organized and operated under the laws of Brazil. Plaintiffs aver they bring this suit as a derivative stockholders' action on behalf of the corporate defendant.

Plaintiffs have followed the proper procedural form for a stockholders' derivative action, as set forth in Pa. R. C. P. 1506. They aver they are stockholders of defendant corporation, that because the individual defendant is in complete control of the company it would be a useless act to request the corporation to bring this suit; relief is asked in favor of the corporation, not the individual plaintiffs. See Beeber v. Wilson, 285 Pa. 312, 316 (1926).

We have jurisdiction over the person of the individual defendant, a general appearance having been entered in his behalf. The corporate defendant having appeared specially for the single purpose of filing preliminary objections, our jurisdiction over it may be limited.

Both defendants have filed preliminary objections wherein, inter alia, each challenges the jurisdiction of this court to entertain the action. The question of jurisdiction has been properly raised. See Pa. R. C. P. 1017(b) (1), 1451, 1509(a) ; Jones v. Unguriet, 364 Pa. 200-201 (1950) ; Jamison v. United Cigar Whelan Stores, 68 D. & C. 121, 123 (1949). It is the main issue for our determination.

The complaint sets forth the following situation. The corporate defendant, Mines Da Oura Saude S/A, was organized under the laws of Brazil, for the purpose of exploiting certain gold mines in the State of Bahia, Brazil, which mines have been and are reported to be the richest gold mines in the world. The corporation has 3,000 authorized issued shares of stock. Plaintiffs, Miller and Kelly, presently hold 295 shares of stock in the corporation; the individual defendant, Joseph Lembo, holds 1,226 shares of stock in the corporation.

Until 1949, defendant Lembo had no interest in Mines Da Oura Saude S/A; then plaintiff Miller sold him 1,226 shares. In February 1950, defendant Lembo replaced plaintiff Kelly as president of the corporation.

In February 1951, a Brazilian attorney replaced plaintiff Miller as treasurer of the corporation.

Plaintiffs aver that from February 1951, to September 1952, the gold mining operation of defendant corporation deteriorated, production was continually lower, construction of a new mining mill was left uncompleted and finally in September 1952, production ceased completely and has never been revived to the present day. It is further averred that both before and after September 1952, much valuable equipment of the corporation located at the site of the gold mine disappeared because of lack of supervision and the abandonment of the site without providing for protection of said equipment. Plaintiffs allege that the corporation is about to have all of its mineral rights canceled by the Brazilian Government, if it has not already done so, and its ownership of land revoked because of the corporation's failure to file an annual report of operations since 1951, as required by Brazilian law. In 1952, plaintiff Miller informed defendant Lembo of this requirement, but the latter ignored the warning.

Plaintiffs believe and therefore aver that the aforestated deterioration of the gold mine and operation of the corporation was caused by the misfeasance and nonfeasance of defendant Lembo in his capacity as president thereof. They set forth four reasons, as follows: (1) When he assumed the office of president, he left Brazil and returned to Philadelphia permanently, and purported to direct the affairs of the corporation from Philadelphia, although under Brazilian law, as a director and officer, he was required to reside in Brazil; (2) since 1951, defendant Lembo has run the affairs of the corporation as though it were his own business, holding no stockholders' meetings or board or directors' meetings since 1951; (3) although plaintiff Miller submitted to defendant Lembo various detailed plans and programs of reorganization in order

to solve the financial problems of the corporation, defendant Lembo never took such plans under consideration and never submitted them to either the board of directors or stockholders for their approval or disapproval; (4) since 1952, defendant Lembo has made no efforts whatever to direct the corporation, has abandoned his duties as an officer and director and has apparently lost all interest in the entire business.

Plaintiffs request this court to order defendant Lembo to render an accounting of all the assets of the corporation from the time he took office to the present time; further, that judgment be entered against the individual defendant and in favor of the corporate defendant in the amount which an accounting and trial will show to have been wasted, misapplied, wrongfully transferred or negligently lost.

Does this court have the power to entertain this action? And if it has the power, should it allow the matter to proceed? For purposes of deciding this issue, we must accept the facts averred in the complaint and disregard facts stated in defendants' preliminary objections: Shaffer v. Shaffer, 354 Pa. 517, 521 (1946).

From the record before us, it is clear that defendant, Mines Da Oura Saude S/A, is a foreign corporation, one that "derives its existence solely from the laws of another state, government, or country": 14A C. J. Corporations §3922. Our Supreme Court has spoken of a foreign corporation as one "not created by the laws of this state": In re Grand Lodge of the Ancient Order of United Workmen, 110 Pa. 613, 620 (1885).

It is firmly established in our Commonwealth that our courts will not take jurisdiction for the purpose of regulating or interfering with the internal management or affairs of a foreign corporation. Nor will our courts interfere in any way in determining the rights or duties of the directors or officers of the corporation

under the laws of a foreign jurisdiction. When the issue between the parties relates merely to corporate management, the injured party must seek redress in the domicile of the corporation: Kahn v. American Cone & Pretzel Co., 365 Pa. 161, 163 (1950) ; Thompson v. Southern Connellsville Coke Co., 269 Pa. 500 (1921) ; The Loan Society of Philadelphia v. Eavenson, 241 Pa. 65 (1913) ; Moulton v. Lathrop, 77 Pa. Superior Ct. 109 (1921).

Exceptions to this well-settled principle have been allowed when the particular circumstances of an action showed the corporation and its stockholders to be an aggrieved third party, and the subject matter did not involve the internal management of a foreign corporation, or if so, only as an incidental factor in the dispute. In such instances, jurisdiction has been taken by our courts: Bailey v. Ancient Egyptian Arabic Order, etc., 162 Pa. Superior Ct. 5 (1948) ; National Guarantee Credit Corporation v. Worth & Co., Inc., 274 Pa. 148 (1922).

The purpose of the general rule rests on discretion more than on a strict question of jurisdiction. The policy rests on a recognition of the want of power to enforce decrees made in proceedings involving a foreign corporation, where under the facts of a particular case the power is lacking: Cunliffe v. Consumers Association of America, 280 Pa. 263, 268 (1924).

To sustain their position, plaintiffs rely on the case of The Loan Society of Philadelphia v. Eavenson, supra. This was an action by a Delaware corporation against former directors of plaintiff corporation after they had severed their connection with the company. The charges were for negligent actions and fraudulent conduct resulting in a financial loss to the corporation. An accounting was sought, and recovery for whatever amount was found due; discovery was also asked. The

lower court dismissed the action for want of jurisdiction. In reversing that judgment, the Supreme Court held the relief sought was not the control of the corporation or its officers, or the management of the internal affairs of the corporation. The court stated, at page 69:

"The corporation is the plaintiff and is seeking the relief asked for. . . . It is duly registered in this State and is authorized to sue in this jurisdiction. The defendants against whom the corporation is proceeding are residents of the State, are within the jurisdiction of the court, and have been duly served. . . . To enforce this relief the bill prays for an accounting and discovery. This, of course, involves an investigation of the management of the affairs of the corporation by the defendants while they were acting in their official capacity as directors. . . . This is not, however, an interference with the internal management of the corporation within contemplation of the rule which denies jurisdiction to our courts. It does not seek to control or regulate the affairs of the corporation. It does not attempt to control the acts of any of the officials of the corporation. It does not seek to determine the rights of the stockholders among themselves or between them and the corporation. There is no attempt to test the right of any officer or director to his office or control his action in the performance of any official duty."

At page 71, in conclusion, the court stated: "An examination of the cases cited and relied on by the learned court below to sustain its action in dismissing the bill discloses a misapprehension of the facts and of the decisions in those cases. In each case the bill was filed by a stockholder, and the visitorial powers of the court were invoked to give the plaintiff the redress he sought. In neither of the cases was the corporation the plaintiff seeking redress for wrongs or injuries

sustained by the misconduct of its former officers who were resident in the jurisdiction of the court."

As distinguished from The Loan Society of Philadelphia case, supra, in the instant case, the corporation is a defendant; there is no averment that the corporation is registered to do business in this State, has ever done business in this State or is doing any at the present time; there is no averment that it has an office in this Commonwealth. Service on the corporation was made at the alleged residence of the corporation's president. While plaintiffs aver the individual defendant has "purportedly directed the affairs" of the corporation from Philadelphia, we seriously doubt that proper service on the corporation has been achieved under the ruling in Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240 (1927), to make it properly a party of record for or against whom relief can be granted.

Plaintiffs argue that defendant corporation is a nominal party to the record, and is included as a party litigant for the sole purpose of the relief requested, that the corporation is in reality the true plaintiff, that the stockholders are merely secondary parties seeking to enforce a corporate right, that the individual defendant is the wrongdoer, that since we have jurisdiction over him, we can afford complete relief in this court.

Were we to take jurisdiction and eventually grant plaintiffs the prayer of their complaint, namely, a judgment in favor of the corporate defendant in an amount determined to be due and owing by the individual defendant, would plaintiffs' argument be sound? From the wording of the complaint, production of the mining operations of the corporation ceased four years ago. There is a possibility, as pleaded, that the Brazilian Government may have already canceled the mineral rights, and revoked the ownership of land. Thus arises a strong question of the present existence

of defendant corporation under Brazilian law. Should this be so, would not a decree in favor of the corporation be a nullity? Contrarywise, should we assume jurisdiction and ultimately decide no judgment should be entered in favor of the corporation, would such judgment be res adjudicata should the corporation in its own name seek to institute suit at a later date? The questions above propounded need not be answered, for we think the issue before us can be decided on a broader basis.

We have complete jurisdiction over the individual defendant in this action. The point for determination is whether or not we should exercise that jurisdiction under the facts of this case. If this is an attempt to control the internal affairs of the corporation, then under the authorities before cited, we think we should not do so.

In the case of Madden v. The Penn Electric Light Co., 181 Pa. 617 (1897), one of the prayers for relief was that the court should decree that the management of a New Jersey corporation was fraudulent and collusive as to its stockholders. On page 622, the court stated: "What constitutes internal management is well defined by STONE, J., in Mining Co. v. Field, 64 Md. 154: 'Where the act complained affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation; and in case of a foreign corporation our courts will not take jurisdiction'."

The rationale behind the decision appears to be that a Pennsylvania resident has no right to call upon our courts to protect him from the consequences of his

voluntary membership in a foreign corporation, when: "By the very act of membership he intrusted his money to the control of an organization owing its existence to and governed by the laws of another state."

A contrasting situation arose in Machen v. Machen & Mayer Electrical Mfg. Co., 237 Pa. 212 (1912). The issue there before the court was whether or not the courts of the State had jurisdiction by mandamus under the facts of the case to compel the directors and officers of a foreign corporation, registered to do business in this State, to permit a codirector to inspect the records and books of the corporation which were within the State and the jurisdiction of the court. The court took the view that it was the duty of a director to make periodic inspections of the corporate books, and such an inspection would not interfere with the internal management of the corporation.

In 1950, the Supreme Court affirmed a holding of our court, permitting a plaintiff stockholder of a West Virginia corporation, registered to do business in Pennsylvania, a writ in mandamus to permit him to inspect such of the corporation's books and records as would disclose the names and addresses of the company's stockholders. Kahn v. American Cone & Pretzel Co., supra. In holding that such permission did not constitute an interference in the internal affairs of a foreign corporation, the court distinguished its decision from that of Ferrari v. Level Coal Mining Co., Inc., 358 Pa. 44 (1947). In holding that the Ferrari case, supra, was not applicable, the court stated, at page 167:

"Jurisdiction was there declined in the exercise of a sound discretion. The inspection sought was in intended aid of charges that certain officers and stockholders of the corporation were wrongfully diverting its earnings to their own pecuniary benefit. In effect, the bill charged the defendants with fraud and corpo-

rate mismanagement for the remedy whereof the plaintiff would have been compelled to resort to the courts of the corporation's domicile."

Plaintiffs have not sought an investigation of the books and records of this Brazilian corporation that might be within our jurisdiction. They ask first, that the individual defendant render an accounting of all the assets of the corporation from the time he took office; secondly, they ask a judgment against the individual defendant and in favor of the corporate defendant "in the amount which such accounting and the trial of this case shows to have been wasted, misapplied, wrongfully transferred, or negligently lost."

We can readily order the individual defendant to account to plaintiffs. That is, however, only one half the relief sought. To determine how much of the corporation's assets have been "wasted, misapplied, wrongfully transferred, or negligently lost", would, in our opinion, involve our interpretation of Brazilian law as it would affect property situate in Brazil. Further, it would necessitate our interpretation of the corporation's charter and by-laws, and the duty of officers thereunder as enforced under Brazilian law. In addition, we would have to exercise visitorial powers over the internal management of the foreign corporation.

Plaintiffs' complaint in equity affirmatively shows that defendant company is a foreign corporation and that the relief sought concerns the internal management and control of the corporation. It is firmly established that our courts will not take jurisdiction for the purpose of regulating or interfering with the internal management or affairs of a foreign corporation. See Kahn v. American Cone & Pretzel Co., supra, and cases cited therein; Business Corporation Law of May 5, 1933, P. L. 364, sec. 1001, 15 PS §2852-1001. Under such circumstances, the injured parties are required to seek redress in the domicile of the

corporation. We will not exercise visitorial power over defendant corporation, nor will we interfere in any way in determining the rights or duties of defendant director or officer of this corporation under the laws of a foreign jurisdiction: Thompson v. Southern Connellsville Coke Co., supra.

Wherefore, the preliminary objections as filed by both defendants relating to jurisdiction are sustained. Plaintiffs' complaint is dismissed.